UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANGELICA MIRANDA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> O'REILLY AUTOMOTIVE STORES, INC. et ) <br> al., ) <br> ) <br> Defendants. ) <br> ) | 2:14-cv-00878-RCJ-PAL <br><br> **ORDER** |

This case arises out of an employer's alleged failure to pay its employees overtime. Pending before the Court is Defendants' Motion to Dismiss (ECF No. 7) the third through fifth claims. For the reasons given herein, the Court denies the motion without prejudice and stays the case.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff Angelica Miranda worked for Defendant O'Reilly Automotive Stores, Inc. ("O'Reilly") in Las Vegas, Nevada as a store manager from January 2013 until April 15, 2014. (Compl. ¶¶ 4, 12–14, ECF No. 1). Miranda and others similarly situated were required to work at least five ten-hour shifts per week and were not paid hourly wages or overtime, despite earning less than $455 per week. (*Id.*). Plaintiff has brought the present Rule 23 class action, accusing O'Reilly, O'Reilly Auto Enterprises, LLC, and CSK Auto, Inc. of violations of the following

federal and state statutes: (1) 29 U.S.C. § 201; (2) 29 U.S.C. § 207; (3) NRS section 608.016; (4) NRS section 608.018; and (5) NRS section 608.020–.050.  Defendants have moved to dismiss the third, fourth, and fifth claims for failure to state a claim.

**II.     LEGAL STANDARDS**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but

also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**III.     ANALYSIS**

The Court has previously ruled that there is no private right of action under NRS sections 608.100 or 608.018. The Court will reiterate its reasoning here. The Nevada Supreme Court has explicitly ruled there is no private right of action to enforce section 608.100. *See Baldanado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 100–05 (Nev. 2008) (finding no private right of action under section 608.100 and two other sections of Chapter 608); *see also Lucas v. Bell Trans*, No. 2:08-cv-01792, 2009 WL 2424557 at *2–5 (D. Nev. June 24, 2009) (Jones, J.) (citing *id.*). Another court of this District has ruled that there is a private right of action for violations of section 608.018 pursuant to section 608.140. *See Buenaventura v. Champion Drywall, Inc.*, 803 F. Supp

.2d 1215, 1218–19 (D. Nev. 2011).  Although the Nevada Supreme Court has not directly addressed the question, the *Buenaventura* court reasoned that because section 608.018 governs payment of overtime wages, and because there is a private right of action to recover unpaid wages under section 608.140, an employee may sue to recover wages owed under the standards of section 608.018 via a section 608.140 action. *See id.* at 1218.

The Court disagrees, however, and rules that section 608.140 does not imply a private right of action to sue under the labor code, but only to sue in contract.  Section 608.140 clearly presumes the availability of some kind of private right of action to recover wages, because it governs attorney's fees and costs in such actions. *See* Nev. Rev. Stat. § 608.140 ("Whenever a mechanic, artisan, miner, laborer, servant or employee shall have cause to bring suit for wages earned and due according to the terms of his or her employment . . . .").  However, section 608.140 only implies a private right of action to recover wages "*earned and due according to the terms of his or her employment*," and therefore appears to govern fees and costs only in common law contractual suits. *Id.* (emphasis added).  The statute does not imply a private remedy to enforce the labor statutes, which impose external standards for wages and hours.  The *Baldanado* Court was emphatic that "the absence of an express provision providing for a private cause of action to enforce a statutory right strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy." *Baldanado*, 194 P.3d at 101.  In ruling that there was no private right of action under sections 608.100, 608.160, and 613.120, the *Baldanado* Court indicated that the Labor Commissioner's authority covered sections 608.005 to 608.195 and that "when an administrative official is expressly charged with enforcing a section of laws, a private cause of action generally cannot be implied." *Id.* at 102.  In light of *Baldanado*'s broad language and warning against lightly implying private causes of action, the Court believes that sections 608.016, 608.018, and 608.020–.050 are within the Labor Commissioner's exclusive jurisdiction,

1   just as section 608.100 is.  The statutes provide a comprehensive remedial scheme whereby
2   review of the Commissioner's decisions is available in the courts.  *See* Nev. Rev. Stat. § 607.215.
3      That remedial scheme is not, as Plaintiff argues, "nonsensical" because it prevents class
4   actions.  It may be frustrating to labor law attorneys that there is no private right of action directly
5   in the courts permitting them to take advantage of the lucrative Rule 23 procedure in cases where
6   the remedy must go through the Commissioner on a case-by-case basis, but that does not render
7   the remedial system adopted by the Nevada State Legislature "nonsensical."  Nevada's general
8   policy favoring class actions does not trump a comprehensive remedial scheme particularly
9   chosen by the Legislature.  Nor is the result "absurd" because Plaintiff also wishes to bring
10  claims under the Fair Labor Standards Act ("FLSA"), which claims may of course be brought in
11  court.  Plaintiff may press her state law claims with the Commissioner while pressing her FLSA
12  claims here.
13     Footnote 33 of *Baldanado* notes, "a private cause of action to recover unpaid wages is
14  entirely consistent with the express authority under NRS 608.140 to bring private actions for
15  wages unpaid and due."  *See* 194 P.3d at 104 n.33.  But the *Baldanado* Court did not directly
16  address the question of whether section 608.140 authorized a private suit or, more importantly,
17  what kinds of suits it implied.  Rather, it made the comment in footnote 33 to contrast those
18  sections of the labor code under which there was no language possibly implying any kind of
19  private right of action at all.
20     Section 608.140 implies only a cause of action to recover wages unpaid and due
21  "according to the terms of his or her employment," which strongly implies a contractual remedy,
22  not a remedy to enforce the labor laws.  The phrase "according to the terms of . . . employment"
23  means "according to the contractual terms of . . . employment," as opposed to something like
24  "according to the laws concerning . . . employment."  This result depends on whether "terms"
25  under section 608.140 more reasonably means "contractual terms," "regulatory standards," or

1   both. The Court finds that it means something more like "contractual terms." A contemporary
2   dictionary defines the word "term" (along with irrelevant definitions) as "[c]ondition;
3   arrangement." Webster's New Standard Dictionary of the English Language 379 (Laird & Lee,
4   1920). Another, more comprehensive, contemporary dictionary defines "term" (along with
5   irrelevant definitions) as "[o]bligations imposed by authority or assumed by contract; conditions
6   offered, or offered and accepted; as, the *terms* of sale; I cannot accept your *terms*." Funk &
7   Wagnalls New Standard Dictionary of the English Language 2486 (1913). In the broadest sense,
8   "condition" could refer to statutory restrictions, as in "it is a condition of your freedom that you
9   not burglarize another's home," but this would be an awkward usage. Such an improbable
10  interpretation should not be made where surrounding text in the definition does not require it.
11  Next, "imposed by authority" indicates that "terms" can apply to not only purely private
12  relationships but also to relationships with the government. But the phrase does not refer to any
13  and all relationships of authority. These parts of the definitions invoke situations such as
14  criminal probation, civil licenses, and other authoritative contexts concerning particularized
15  relationships between an authority and an individual, as opposed to general regulatory
16  commands. One speaks of "terms of probation" or "terms of a license," but one does not speak
17  of statutory prohibitions or commands inversely as "terms of lawful behavior," which usage,
18  again, although grammatically possible, would be odd. So although "terms" may refer to
19  arrangements between a government and a citizen, it fairly does so only in contexts where those
20  two parties have a particularized relationship, not in the general sense that a citizen is subject to
21  the terms of a statute. Furthermore, the statute speaks of "terms of . . . employment," not "terms
22  of the law," indicating that the statute means terms "assumed by contract," not those "imposed by
23  authority." *See id.* The word "arrangement" used in Webster's and the contractual examples
24  given in Funk & Wagnalls clarify the meaning of "terms" when the respective definitions are
25  considered as a whole. Employers and employees do not arrange the labor statutes; they arrange

their contractual relationships.  In summary, the word "terms" indicates negotiated terms, as per a contract, not externally imposed standards, as per a statute.

The respective dates of passage of sections 608.140 and 608.018 also support this conclusion.  Section 608.140 (implying a right of action to recover unpaid wages) predates section 608.018 (overtime standards) by half a century.  Section 608.140 was adopted in 1925.  *See* 1925 Nev. Stat. 226–27.  That pre-New Deal statute not only predates Nevada's overtime laws by fifty years, *see* 1975 Nev. Stat. 1583, it also predates federal wage and overtime laws by over a decade, *see* Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060 (1938).  Section 608.140 cannot have meant to the People of Nevada in1925 that there was a private right of action under state wage and overtime laws not to be enacted until 1975.  Taking into consideration the "according to the terms of . . . employment" language of section 608.140, and what that language meant objectively when it was written, the statute implies only a traditional contractual claim under the common law.

Plaintiff argues that the Plaintiff in *Descutner* failed to point out the existence of three state labor laws predating section 608.140 and one labor law passed twelve years thereafter.  The Court has examined that statutes, which Plaintiff has adduced, and they do not change the Court's analysis.

One of the cited statutes is a 1925 statute that provides a cause of action to recover not only unpaid wages after termination, but also up to thirty days' additional wages for each day of nonpayment after termination (based upon the contract of employment) and providing for a lien in the relevant amount. *See* 1925 Nev. Stat. 226.  The statute simply provides a substantive rule of damages, noting that an employee may in a traditional action recover the "default wages" just as if he had earned them.  The private right of action created to collect the default wages in addition to the actual wages, however, was explicitly limited to the statute itself.  The very next chapter of the 1925 statutes, chapter 140, is the predecessor statute to section 608.140.  Section 1

of chapter 140 cannot be read to create a private right of action to enforce the substantive rule of damages set forth in section 1 of chapter 139, because section 2 of chapter 139 does that directly. If section 1 of chapter 140 were read to imply a private right of action to enforce section 1 of chapter 139, the latter portion of section2 of chapter 139 would be superfluous, as the statutes were simultaneously adopted.  Read together, section 2 of chapter 139 and section 1 of chapter 140 mean that in any action for breach of contract concerning wages, an employee may collect not only the unpaid wages, but also up to thirty days' worth of "default wages" as if he had continued to work according to his contract between the date of termination and the date of payment, plus attorney's fees.

Next is a 1919 statute concerning the timeliness of wage payments.  The statute imposes criminal penalties for its violation, does not state anything about private enforcement, and explicitly gives the Commissioner the duty of enforcement in section 7. *See* 1919 Nev. Stat. 123.

Next is a 1913 statute restricting child labor.  The statute imposes criminal penalties for its violation.

Next is a 1937 statute, passed twelve years after the section implying a private right of action, fixing minimum wages and maximum hours for female employees.  Although the statute would likely be held unconstitutional today because of the sex-based distinction it draws, it is potentially valuable in the present context if it tends to show that a private right of action to enforce the labor statutes can be implied therein directly or when read in conjunction with section 608.140.  But it does not tend to show that.  First, the statute post-dates section 608.140, so it does not tend to show that the 1925 Legislature had in mind statutes like this one when it used the phrase "terms of employment."  Second, like the 1919 statute, the 1937 statute imposes criminal penalties for its violation, does not state anything about private enforcement, and explicitly gives the Commissioner the duty of enforcement in section 8. *See* 1937 Nev. Stat. 470.

The Nevada Legislature could easily have amended section 608.140 after the adoption of the wage and overtime laws in such a way as to permit a court to imply a private right of action under those laws, or it could have amended the statutes explicitly to provide for a private right of action, but it has done neither. Also, under appropriate circumstances, a law implying a private right of action could extend to laws not yet written. For example, a law could provide for fee shifting broadly in "all actions for wages." Such a statute would fairly apply to future statutory wage claims despite the fact that the authors did not envision such laws. But in this case, where the statute is not so broad, it is not reasonable to imply from section 608.140 a private right of action under yet-to-be-written wage and overtime statutes at a time when no such statutes existed in the State or even nationally, particularly not where the Commissioner was given explicit administrative authority to enforce the laws when they were later adopted. Even if the authors of section 608.140 had subjectively intended, i.e., if a majority of them had so intended, along with the Governor, to provide for a private right of action under yet-to-be-written wage and overtime laws, they simply failed to accomplish that result when they adopted a statute that cannot reasonably be read to provide for this. It does not matter that one might think the Legislature in 1925 would have wanted to include statutory wage claims within the implication had it anticipated such regulations. That is not the law the State enacted. A ball is not a strike simply because the pitcher meant to throw one (or would have attempted to throw one had he had more information). Batters have to deal with pitches as they are arrive at the plate, and umpires must therefore in fairness call pitches as they arrive at the plate. The law the Legislature enacted in this case contains the qualifying phrase "according to the terms of his or her employment," and the Court must give these words effect if at all possible; it cannot read the language out of the statute based upon its guess as to what the Legislature and Governor would have agreed to had they in fact considered it.

1       The Nevada Supreme Court has not yet performed this analysis in a reported case where
2 the result mattered, though it has noted in dicta and in unpublished cases that there is a private
3 right of action (of some scope) under section 608.140. *See, e.g.*, *Baldanado*, 194 P.3d at 104
4 n.33; *Csomos v. Venetian Casino Resort, LLC*, No. 55203, 2011 WL 4378744, at *2–3 (Nev.
5 Sept. 9, 2011) (noting in an unpublished opinion that section 608.140 implies a private right of
6 action to recover wages but not addressing the scope of the implied right of action). Although
7 the *Buenaventura* court previously ruled contrary to this Court, another court of this District has
8 since adopted this Court's analysis in a reported decision. *See Dannenbring v. Wynn Las Vegas,*
9 *LLC*, 907 F. Supp. 2d 1214, 1218–19 (D. Nev. 2013) (Mahan, J.). None of the unpublished
10 federal or state cases ruling otherwise to which Plaintiff cites have given significant attention to
11 the critical issue, i.e., the intent of the Legislature. The cases to the contrary typically note that
12 section 608.140 permits a private right of action, and then conclude, without the kind of analysis
13 this Court performed in *Descutner*, that the statute necessarily implies a private right of action to
14 enforce any kind of labor law. That non sequitur is inconsistent with the rule of *Baldanado* as
15 applied to the legislative history. In conclusion, because the private right of action that can be
16 implied under 608.140 only reasonably includes pre-wage-and-overtime-law contractual claims,
17 the Court is inclined to dismiss the third through fifth claims under sections 608.016, 608.018,
18 and 608.020–.050.
19       Finally, Plaintiff notes that the Nevada Supreme Court has taken a case under submission
20 that may authoritatively determine the matter. *See Landers v. Quality Commc'ns, Inc.*, No.
21 62181. The Court will therefore deny the motion without prejudice and stay the case until the
22 Nevada Supreme Court issues its ruling.
23 ///
24 ///
25 ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 7) is DENIED, without prejudice.

IT IS FURTHER ORDERED that the case is STAYED.

IT IS SO ORDERED.

Dated this 26th day of August, 2014.

_____
ROBERT C. JONES
United States District Judge